# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JEFFREY CORDELL PATTERSON, ) | |
| ) | |
| Movant, ) | |
| ) | Civil No. 14-4223-CV-C-FJG |
| v. ) | Crim. No. 10-04052-04-CR-C-FJG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Currently pending before the Court is movant's Motion to Vacate, Set Aside or Correct his Sentence, pursuant to 28 U.S.C.§ 2255 (Doc. # 1).

### I. BACKGROUND

On June 23, 2011, a second superseding indictment was returned in the Western District of Missouri charging Patterson and three co-defendants with conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana and five kilograms or more of a mixture and substance containing cocaine. On March 18, 2013, under a written plea agreement, Patterson pled guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a lesser included offense under Count One of the second superseding indictment. A presentence investigation report was prepared which calculated a base offense level of 32, a total offense level of 29 and a criminal history category of III, resulting in an advisory Sentencing Guidelines range of 108 to 135 months' imprisonment.

Patterson's counsel objected to the base offense level, arguing that is should be 26, to correspond to the 500 grams or more that he had admitted to at the time of the plea. He also objected to the PSR's failure to recommend a reduction for a mitigating role in the offense and also to two criminal history points assessed for his commission of an offense while under another criminal justice sentence. At sentencing, the Court considered these objections, but sustained only the objection regarding criminal history. The Court then departed below the advisory Guidelines range and sentenced Patterson to 90 months' imprisonment. On September 5, 2013, the judgment and commitment were entered by the Court. Patterson did not file a notice of appeal from the final judgment and filed the instant 28 U.S.C. §2255 on August 14, 2014. In his motion, Patterson asserts four claims of ineffective assistance: 1) Counsel failed to properly advise Patterson of the law relevant to whether to plead guilty and coerced Patterson to plead guilty with unfounded and unreliable assertions; 2) Counsel failed to broaden the scope of the investigation and investigate other lines of defense; 3) Counsel failed to advise him that he could put the question of drug quantity before a jury; 4) Counsel did not inform defendant of the elements of a conspiracy and the evidence did not show that defendant was part of a conspiracy.

## II. STANDARD

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

2

The district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (citing Larson v. United States, 905 F.2d 218, 220-21 (8th Cir. 1990), cert. denied, 507 U.S. 919, 113 S.Ct. 1278, 122 L.Ed.2d 672 (1993)).

Our analysis of the ineffectiveness claims is governed by Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on an ineffectiveness claim, Patterson must show "both deficient performance by counsel and prejudice." Id. at 687-88. In Johnson v. U.S., 860 F.Supp.2d 663 (N.D.Iowa 2012), the Court stated:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland], 466 U.S. at 688, 104 S.Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052. Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); Premo v. Moore, 562 U.S. 115, 121-122, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting Richter). Also, the court " 'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." ' " King [v. United States,595 F.3d 844,] 852–53 (quoting Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir.1996), in turn quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). There are two substantial impediments to making the required showing of deficient performance. First, " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " United States v. Rice, 449 F.3d 887, 897 (8th Cir.2006) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " Id.

(quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); Davis v. Norris, 423 F.3d 868, 877 (8th Cir.2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.")

Id. at 741. In United States v. Orr, 636 F.3d 944 (8th Cir.) cert. denied, 132 S.Ct. 758 (2011), the Court stated, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 952 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). However, as noted in Armstrong v. Kemna, 534 F.3d 857 (8th Cir. 2008), "[o]n the other hand, strategic choices 'resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.'" Id. at 864-65 (quoting Kenley v. Armontrout, 937 F.2d 1298,1304 (8th Cir.) cert. denied, 502 U.S. 964 (1991)).

### III. DISCUSSION

**A. Ground One – Counsel Failed to Advise Patterson of the Law Relevant to the Decision to Plead Guilty Which Resulted in a Coerced Plea.**

Patterson states that his attorney coerced him into pleading guilty with unfounded and unreliable assertions that a guilty plea was his only viable option. Patterson states that his attorney repeatedly told him "[t]hese people were moving huge amounts of drugs . . .and because you entered into a conspiracy with them, everything they did and were responsible for is directly attributable to you." (Doc. No. 2, p. 5). Patterson states that "this is enough to scare even an innocent man into potentially pleading guilty. And although Defendant is not, in fact innocent, he did likewise find himself intimidated enough from his lawyer's assertions to plea out to more serious conduct than he had

4

been responsible for." (Doc. # 2, pp 5-6). Patterson argues that a defendant in a conspiracy is responsible for the quantity of drugs involved in the conspiracy only when the quantity is reasonably foreseeable and a defendant's role in the conspiracy is relevant to determine what was foreseeable. Patterson states that "it is only where a defendant holds 'a position within a conspiracy with adequate exposure to information about the conspiracy,' that the potential of the conspiracy is more foreseeable to him that it would be to a '[low-level buyer].'" (Doc. 2, p. 6). Patterson states that this case law contrasts with what his attorney represented to him.

The Government argues in opposition that these alleged deficiencies by counsel did not constitute ineffective assistance of counsel. The Government notes that Patterson was permitted to plead guilty to a lesser-included offense, counsel objected to the base offense level recommended in the PSR and also argued for a mitigating role. The Government notes that "[c]learly his attorney took every conceivable action to support Patterson's position that he was not responsible for the entirety of the conspiracy, and any failure to engage Patterson more fully on the legal issues did not alter the ultimate outcome of his case." (Government's Suggestions in Opposition, p. 6).

The Court does not find that counsel's statements constituted ineffective assistance because counsel correctly advised Patterson of the law related to conspiracies. In U.S. v. Stauffacher, No. 13-1474(RHK), 2013 WL 5655808 (D.Minn. Oct.15, 2013), the Court stated:

> [T]he Eighth Circuit Court of Appeals has plainly stated that [a] defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the conspiracy. . . .Defendant seems to believe that he should be held accountable only for specific events in which he actively participated. But

5

the case law does not support that notion. The Eighth Circuit had held that in conspiracy cases such as this one, a defendant can be sentenced for *all transactions* that the defendant reasonably could have been aware of.

Id. at *3 (internal citations and quotations omitted). In U.S. v. Atkins, 250 F.3d 1203, 1213 (8th Cir. 2001), the Court stated, "[T]he testimony of co-conspirators is sufficient evidence on which the court may base the quantity of drugs used for sentencing." In this case, in the factual basis for the plea, one of Patterson's co-conspirators identified him as his primary cocaine customer, indicating that he met him in 2007 or 2008 and within 1-2 months, Patterson was buying approximately 9 ounces of cocaine approximately 3 times a month. In the Pre- Sentence Investigation Report for Jason Holloway, one of the co-conspirators, the report indicates that the investigation revealed that Holloway was obtaining one kilogram of cocaine and between 50 and 100 pounds of marijuana each month from Jaime Cerros-Perez, over a two-year period. This would result in 1,200 but not more than 2,400 pounds of marijuana and 24 kilograms of cocaine. Jaime Cerros-Perez was identified as the primary source of cocaine and marijuana for the conspiracy. In his Pre-Sentence Investigation Report, it was estimated that Cerros-Perez was responsible for supplying a combined converted total of 12,382.01 pounds of marijuana equivalent.[1] The fourth co-conspirator was Damon Reed Lower. His Pre-Sentence Investigation report indicated that he was also involved in the conspiracy with Holloway and the others who were supplying and distributing multi-pound quantities of methamphetamine and marijuana throughout the Fulton/Callaway County, Missouri area. The report indicates

---

[1] The Sentencing Guidelines provide a means for combining various controlled substances by converting the substances into marijuana equivalent. In the conversion, one gram of cocaine is equivalent to 200 grams of marijuana.

6

that Jamie Cerros-Perez was Holloway's supplier. Damon Lower was found to have transported, stored and purchased drugs from Holloway to sell to his own customers. Lower's Pre-Sentence Report indicates that the quantities involved in the conspiracy exceeded 1,000 kilograms of marijuana and 5 kilograms or more of cocaine. Thus, from a cursory review of the Pre-Sentence Investigation reports, it is clear that large quantities of marijuana and cocaine were being transported, bought and sold by the members of this conspiracy. It is also clear that based on Holloway's proffer, Patterson was intimately involved in this conspiracy, purchasing 9 ounces of cocaine, approximately three times a month, for a period of up to two years. Thus, counsel's statement to Patterson was not incorrect, as it was reasonably foreseeable that Patterson was aware of the large quantities of drugs involved in the conspiracy. Accordingly, the Court finds that Patterson did not receive ineffective assistance of counsel.

**B. Ground Two – Failure To Broaden Scope of Investigation Was Unreasonable**

Patterson asserts in his second claim for relief that his attorney should have conducted an independent interview with Holloway, "he would have been able to ascertain the level of credibility (with more adequate recommendations as to potential trial strategy) and use these depositions for possible impeachment since Defendant's actual drug quantity amounted to substantially less than the approximate 27 ounces per month as asserted." (Doc. # 2, p. 7). The Government argues in response that Patterson does not explain what information could have been gathered from an interview with Holloway which would have possibly altered the outcome of the case and

thus Patterson cannot demonstrate prejudice. In reply, Patterson argues that his pre-trial defense investigation rested solely on information and accounts gathered by federal agents.

In the Suggestions in Support of his Motion, Patterson admits that he was not in fact innocent of the crimes with which he was charged. The Court is unsure what information Patterson hoped his counsel could potentially elicit from Holloway. Patterson seems to be arguing that if his counsel had interviewed Holloway, he could somehow use the information gained through the interview to argue that Patterson was less culpable than others who were involved in the conspiracy. However, as explained above, because the amount of drugs involved in the conspiracy were reasonably foreseeable to Patterson, he was responsible for that quantity as well. Additionally, without any assertions as to what Holloway would have stated in an interview, it is only speculation as to what he would have said. In United States v. Vazquez-Garcia, 211 Fed. Appx. 544 (8th Cir.), cert. denied, 552 U.S. 939 (2007), the Court stated:

> "We have stated that failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir.1994). This does not automatically lead to a conclusion that counsel was ineffective however, because even if we assume that counsel's failure to interview Morales did not meet an objective standard of conduct, Vazquez still needs to "make a substantial showing that, but for counsel's failure to interview ... the witness[ ] in question, there is a reasonable probability that the result of his trial would have been different." Id. Vazquez has not made the substantial showing required of him in this case. He has not provided any independent evidence to the court as to what Morales would have allegedly said had he been interviewed or called to testify. See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.) (holding that appellant who filed a § 2255 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness,

8

> which was not enough to undermine confidence in the outcome of the trial, as required by Strickland), cert. denied, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989). Vazquez has provided no affidavits or any other information supporting his claims to the court. The only information about what Morales's potential testimony would have been is speculation on the part of Vazquez. Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding.

Id. at 546. Similarly, in the instant case, the Court also finds no prejudice from counsel's failure to interview Holloway, because Patterson has offered nothing more than his speculation as to what he would have testified to. Accordingly, the Court finds that counsel was not ineffective for failing to interview Holloway.

### C. Ground Three – Counsel Failed to Inform Defendant That He Had the Right to Have the Alleged Drug Quantity Submitted to a Jury

Patterson argues that his counsel was ineffective for failing to inform him that a jury could determine the question of the drug quantity that he was responsible for. Patterson argues that if a jury had determined his drug quantity, then both his statutory and Guideline exposure would have been significantly reduced. Patterson states that in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), any potential penalty increase for a crime must be submitted to a jury. Patterson states that his counsel incorrectly informed him that drug quantity is not an issue that is decided by a jury. In his Reply Suggestions, Patterson argues that the only person who connected him to the conspiracy was the testimony of Holloway, who was not interviewed by Patterson's attorney. Patterson states that despite pleading to over 500 grams, he was not in fact guilty of such a quantity and due to a misunderstanding regarding the reasonable foreseeability defense, he assumed that he could be held accountable for everything involved in the conspiracy.

9

The error in Patterson's argument is that he believes that if he had gone to trial, a jury would have found him responsible for only the quantity of drugs which he claims he was responsible for. However, as explained above, Patterson was charged with conspiracy to distribute and possession with intent to distribute marijuana and cocaine. "A defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the conspiracy." U.S. v. Mickelson, 378 F.3d 810, 821 (8th Cir. 2004)(quoting United States v. Atkins, 250 F.3d 1203, 1211-12 (8th Cir. 2001)). So, even assuming that Patterson's counsel failed to explain that a jury could determine drug quantity if he had gone to trial, this did not prejudice Patterson, because the jury would have heard the same evidence and determined the quantity of drugs that the entire conspiracy was responsible for. Patterson mentions Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and seems to suggest that this would have affected his case. However, as the Court explained in U.S. v. Colton, No. 15-1226(DSD), 2015 WL 3968750 (D.Minn. June 30, 2015), "[u]nder Apprendi, any fact that increases a penalty for a crime beyond the prescribed statutory maximum must be charged and proven beyond a reasonable doubt. Id. at 490. A judicially determined drug quantity is still permissible, however, 'so long as it results in a sentence within the [statutory] maximum' for an indeterminate amount of the drug." Id. at *2 (quoting United States v. Sheppard, 219 F.3d 766, 768 (8th Cir. 2000)). Similarly, in U.S. v. Garcia, No. 13-1140(MJD), 2014 WL 537658 (D.Minn. Feb. 11, 2014), the petitioner claimed that his sentencing violated Apprendi because the base offense level was not pleaded in the indictment and was not proved beyond a reasonable doubt to a jury. However, the Court found that this

10

argument was meritless, because petitioner was not sentenced beyond the statutory maximum and his drug quantity calculation was both pleaded to and proven by admission. The Court found that "Apprendi is not violated because the statutory maximum of life imprisonment is triggered by this 500 gram quantity admitted to and pleaded to by Petitioner, and life imprisonment is greater than the 188 month sentence Petitioner received." Id. at *4. Similarly, in the instant case, the Court does not find that there is an Apprendi issue, because the maximum term of imprisonment for Count I is 40 years, and Patterson was only sentenced to 90 months. Accordingly, the Court finds that Patterson's counsel was not ineffective for failing to inform him that he had the right to have the drug quantity submitted to the jury.

**D. Ground Four – Counsel was ineffective for failing to meaningfully contest the alleged conspiracy involvement and coercing defendant to plead guilty.**

Patterson states that his counsel never informed him of the elements of a conspiracy, did not discuss the elements with him and instead led him to believe that he was guilty by association. Patterson states that he never agreed to distribute controlled substances, never intentionally joined the agreement or did not know the essential purpose of the conspiracy. In opposition, the Government states that Patterson's claim is inconsistent with the record. At the plea hearing, Patterson stated that he was satisfied with his attorney's representation, he agreed that his attorney had done everything requested of him and had not done anything that he did not want him to do. Patterson also stated that he was pleading guilty of his own free will and denied that he had been threatened in any way to plead guilty. The Government also asserts that Patterson was informed multiple times of his rights and the Government's responsibility

11

to prove the elements of the offense beyond a reasonable doubt.

    During the Change of Plea Hearing, the Court questioned Patterson:

    The Court: Thank you. Now, have you had enough time to talk to Mr. Hilbrenner about your decision to plead guilty here today?
    Mr. Patterson: Yes.
    The Court: Do you need any more time to talk to him?
    Mr. Patterson: No.
    The Court: Are you satisfied with his representation of you?
    Mr. Patterson: Yeah.
    The Court: Has Mr. Hilbrenner done everything you've asked him to do?
    Mr. Patterson: Yes.
    The Court: And is there anything that Mr. Hilbrenner did that you did not want him to do?
    Mr. Patterson: No.
    The Court: Now, has anybody threatened you in any way to get you to plead guilty here today?
    Mr. Patterson: No.
    The Court; Are you pleading guilty of your own free will?
    Mr. Patterson: Yes, sir.

(Change of Plea Transcript, p. 6).

Additionally, the Court also went over the Plea Agreement with defendant.

The Court: And, Mr. HIlbrenner, did you go over the discovery with your client?
Mr. Hilbrenner: Yes, sir.
The Court: And are you satisfied that the Government could prove the facts described in those four paragraphs?
Mr. Hilbrenner: Yes, Your Honor.
. . .
The Court: Okay, Mr. Patterson, did you read those paragraphs carefully?
Mr. Patterson: Yes.
The Court: And do you admit that you committed the criminal acts that are described in those paragraphs?
Mr. Patterson: Yes.
The Court: So, let me ask you. How do you plead to the charge in the Indictment, the charge of distributing 500 grams or more of cocaine, guilty or not guilty?
Mr. Patterson: Guilty.
The Court: Are you pleading guilty because, in fact, you are guilty of the crime?
Mr. Patterson: Yes.
The Court: Has anybody threatened you in any way, shape or form to get you to plead guilty here today?
Mr. Patterson: No.

12

Case 2:14-cv-04223-FJG   Document 14   Filed 11/18/16   Page 12 of 15

(Change of Plea Transcript, pp. 12-13).

Similarly, at the Sentencing Hearing, the Court inquired of Patterson:

The Court: All right. Mr. Patteson, have you had an opportunity to review your presentence report?
The Defendant: Yes, sir.
The Court; Do you feel you've had sufficient time to do that?
The Defendant: Yes, sir.
The Court: And have you also had the opportunity to discuss it with your counsel?
The Defendant: Yes.
The Court: And do you feel that you and he have had the opportunity - - a sufficient opportunity to discuss the report?
The Defendant: Yes.

(Sentencing Transcript, p. 1).

> A defendant challenging a guilty plea must show the plea does not represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . .When a defendant pleads guilty and later alleges that he did not make the plea voluntarily and intelligently, [he] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Brown v. U.S., 4:13CV2204RWS, 2015 WL 1542102, *6 (E.D.Mo. Apr. 7, 2015)(internal citations and quotations omitted). "The binding nature of a plea of guilty thus depends on the fact that it is made 'voluntarily after proper advice' and with an understanding of the consequences." United States v. Frook, 616 F.3d 773, 774 (8th Cir.), cert. denied, 562 U.S. 1096 (2010)(quoting Kercheval v. United States, 274 U.S. 220, 223-24, 47 S.Ct. 582, 71 L.Ed 1009 (1927)). "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621,1629, 52 L.Ed.2d 136 (1977). "A defendant's later conclusory claim that he did not understand what was going on during a plea hearing rings hollow. . . .The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." Khoi Van

13

Ha v. U.S., No. C 11-4012-MWB, 2011 WL 4600707, *6 (N.D.Iowa Oct. 3, 2011)(internal citations and quotations omitted).

In the instant case, at the Change of Plea Hearing, the Court read the charge that Patterson was pleading guilty to. The Court explained the potential range of punishment for that charge. The Court specifically confirmed that Patterson understood the charge he was pleading to and the range of punishment that he faced. The Court further confirmed that Patterson had had enough time to talk to Mr. Hilbrenner about his decision to plead guilty and that he was satisfied with his conduct. The Court confirmed that Patterson had read and understood the Plea Agreement and that he had enough time to discuss it with Mr. Hilbrenner. The Court also went over all of the rights that Patterson was giving up by deciding to plead guilty and confirmed that Patterson had sufficient time to think about his decision to plead guilty. As Patterson has offered nothing other than his statement that counsel did not discuss the elements of a conspiracy charge with him, the Court finds that the record refutes this claim. Patterson was asked and confirmed multiple times whether he understood the charge that he was pleading guilty to and the consequences of that decision. Patterson also confirmed that Hilbrenner did everything that he asked him to do and nothing which he had instructed him not to do. The Court finds that Patterson has failed to show that his plea was made involuntarily or without an understanding of the elements that he was pleading to. Accordingly, the Court hereby **DENIES** Patterson's claim for relief on this ground.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Patterson's Motion to Vacate, Set Aside or Correct His Sentence on all grounds. No evidentiary hearing will

be held in this matter because the issues raised are resolvable by the record. Furthermore, movant will be denied a motion for certificate of appealability. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." The Court finds that the issues raised by movant do not meet this criteria.

Date: November 18, 2016  **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
United States District Judge